**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-06020 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| GREENHILL & CO., INC., SCOTT L. BOK, | : **SECURITIES EXCHANGE ACT OF** |
| MERYL D. HARTZBAND, JOHN D. LIU, | : **1934** |
| ULRIKA M. EKMAN, and KEVIN T. | : |
| FERRO, | : **JURY TRIAL DEMANDED** |
| | : |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Greenhill & Co., Inc. ("Greenhill" or the "Company") and the members of Greenhill's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Greenhill by affiliates of Mizuho Americas LLC ("Mizuho").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on June 30, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Blanc Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Mizuho, will merge with and into Greenhill, with Greenhill surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 22, 2023 (the "Merger Agreement"), each Greenhill stockholder will receive $15.00 in cash (the "Merger Consideration") for each Greenhill share owned.

3. As discussed below, Defendants have asked Greenhill's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Greenhill's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, an owner of shares of Greenhill stock and has held such shares since prior to the wrongs complained of herein.

10. Individual Defendant Scott L. Bok has served as a member of the Board since 2019 and is the Company's Chief Executive Officer and Chairman of the Board.

11. Individual Defendant Meryl D. Hartzband has served as a member of the Board since July 2018.

12. Individual Defendant John D. Liu has served as a member of the Board since April 2021.

13. Individual Defendant Ulrika M. Ekman has served as a member of the Board since August 2021.

14. Individual Defendant Kevin T. Ferro has served as a member of the Board since June 2017.

15. Defendant Greenhill is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 1271 Avenue of the Americas, New York, NY 10020. The Company's stock trades on the New York Stock Exchange under the symbol "GHL."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. **The Proposed Transaction**

18. Greenhill, an independent investment bank, provides financial and strategic advisory services to corporations, partnerships, institutional investors, and governments worldwide. The Company offers advisory services related to mergers and acquisitions, divestitures, restructurings, financings, private capital raising, and other similar transactions. It also advises clients on valuation, negotiation tactics, industry dynamics, structuring alternatives, timing and pricing of transactions, financing alternatives, and strategic matters, such as activist shareholder defense, special committee projects, licensing deals, and joint ventures. In addition, the Company provides restructuring advisory services to debtors, creditors, governments, and acquirers of distressed companies and assets. It also provides advice on valuation, debt capacity, liability management, restructuring and financing alternatives, capital structures, and M&A in both in-court and out-of-court processes. Further, it advises on private placements of debt and structured equity, refinancing of existing debt facilities, negotiating the modification and amendment of covenants, as well as acts as an independent advisor. Additionally, the Company offers financial advisory services to pension funds, endowments, and other institutional investors on transactions involving alternative assets; and advice to alternative asset fund sponsors for

private capital raising, financing, restructuring, liquidity options, valuation, and related services. The Company was founded in 1996 and is headquartered in New York, New York.

> 19. On May 22, 2023, the Company announced the Proposed Transaction:
>
> TOKYO and NEW YORK, May 22, 2023 (GLOBE NEWSWIRE) -- Mizuho Financial Group, Inc. (TSE: 8411 and NYSE: MFG) and Greenhill & Co., Inc. (NYSE: GHL) today announced a definitive agreement for Mizuho to acquire Greenhill in an all-cash transaction at $15 per share, reflecting an enterprise value of approximately $550 million, including assumed debt. Through this transaction, Mizuho will accelerate its investment banking growth strategy, building on Greenhill's 27-year history of advising important clients on significant mergers & acquisitions, restructurings and capital raising transactions.
>
> Following completion of the transaction, Greenhill will operate globally from its 15 locations around the world as the M&A and restructuring advisory business of Mizuho. That business will maintain the Greenhill brand, and the existing Greenhill leadership team will remain in place.
>
> Greenhill Chairman & Chief Executive Officer Scott L. Bok will become Chairman of the M&A and restructuring advisory business. Current Greenhill Co-Presidents Kevin Costantino and David Wyles will become Co-Heads of the business. The Greenhill business will sit within Mizuho's banking division, led by Michal Katz, Head of Banking in the Americas.
>
> "Greenhill is a proven industry leader, and its team has led many of the largest and most complex transactions for clients globally, across a wide range of sectors," said Jerry Rizzieri, President and CEO, Mizuho Securities USA. "Mizuho is committed to the expansion of its investment banking platform, and we are excited for the Greenhill team and brand to become a core pillar of this strategy."
>
> "We are pleased to be announcing a transaction that provides significant benefits to each of our stakeholders—clients, employees and stockholders. Our clients will continue to receive the same high quality advice from the same team, operating under the same brand, overseen by the same management. In addition, those clients will now benefit from access to the wide range of financing, capital markets and other products offered by Mizuho, one of the world's leading banks. Our employees will see little

change in their day-to-day work and will benefit from access to Mizuho's vast global client base as well as its broad range of products," said Scott Bok, Chairman & CEO, Greenhill. "Our firm was a pioneer in the concept of the publicly traded independent investment bank, and that format served us well for many years. Now, given the evolution of markets, we believe our clients and employees will benefit from our team becoming part of a larger, more diversified financial institution."

With this transaction, Mizuho will welcome Greenhill's 370 employees, as well as the valued client relationships they have built around the world. Both management teams are committed to a seamless transition for all clients and employees.

"We are thrilled to add one of the preeminent M&A firms globally to our platform, and we see meaningful synergies in the combination that will benefit all of our stakeholders," Masahiro Kihara, President and Group CEO of Mizuho Financial Group, and Shuji Matsuura, Chairman and CEO of Mizuho Americas, said in a joint statement. "Our Banking division today serves over 1,300 clients in the Americas and 900 in Europe, as well as over 70 percent of all listed companies in Japan. We look forward to making Greenhill's M&A and restructuring capabilities available to our clients, and to offering our full range of solutions to Greenhill's clients. The transaction represents an important strategic milestone, and we plan to continue to invest in the growth of our global banking franchise."

The transaction is expected to close by year end and is subject to approval by Greenhill stockholders, as well as required regulatory approvals and other customary closing conditions.

Citi and Mizuho served as financial advisors, and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Davis Polk & Wardwell LLP served as legal advisors to Mizuho. Houlihan Lokey served as financial advisor and Wachtell, Lipton, Rosen & Katz served as legal advisor to Greenhill.[1]

\* \* \*

---

[1] *Mizuho to Acquire Premier M&A Advisory Firm Greenhill*, GLOBENEWSWIRE (May 22, 2023), https://www.globenewswire.com/news-release/2023/05/22/2673304/0/en/Mizuho-to-Acquire-Premier-M-A-Advisory-Firm-Greenhill.html.

20. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Greenhill's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

21. On June 30, 2023, Greenhill filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22. The Proxy Statement fails to provide material information concerning financial projections by Greenhill management and relied upon by Houlihan Lokey in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company that are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Houlihan Lokey to aid them in forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Greenhill management provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably

7

among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

23. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial measures, such as Adjusted EBITDA, but fails to provide line items used to calculate the measures and/or a reconciliation of the non-GAAP measure to its most comparable GAAP measure, in direct violation of Regulation G and consequently Section 14(a).

24. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied upon by a board of directors in order to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25. The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

non-discretionary expenditures that are not deducted from the measure.[2]

26. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP measures included in the Proxy Statement not misleading.

27. In addition, the Proxy Statement fails to disclose the unlevered free cash flows ("UFCF") for the Company or the line items used to calculate the UFCF, a metric Houlihan Lokey relied upon for its *Discounted Cash Flow Analysis*.

*Omissions and/or Material Misrepresentations Concerning Houlihan Lokey's Financial Analyses*

28. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples of the companies selected by Houlihan Lokey for the analysis; and (ii) the basis for applying the reference ranges of 8.0x to 10.0x FY 2020-FY 2022 Avg. Adjusted EBITDA and 6.0x to 8.0x FY 2024E Adjusted EBITDA.

29. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values of the Company; (ii) the inputs and assumptions underlying the perpetuity growth rates of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 12.0% to 15.0%; and (iv) the Company's normalized estimated 2027 unlevered free cash flows.

30. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

34.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed

to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

35. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

36. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. The Individual Defendants acted as controlling persons of Greenhill within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Greenhill, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of Greenhill, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Greenhill and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: July 13, 2023

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Benjamin Y. Kaufman*
Benjamin Y. Kaufman
Rourke C. Donahue
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4620
Fax: (212) 686-0114
kaufman@whafh.com
donahue@whafh.com

*Attorneys for Plaintiff*